**Dorothy JEFFRIES, Plaintiff-Appellant,**

v.

**TURKEY RUN CONSOLIDATED SCHOOL DISTRICT et al., Defendants-Appellees.**

No. 73-1535.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1973.

Decided Feb. 5, 1974.

Richard J. Darko, Jonathan L. Birge, Indianapolis, Ind., for plaintiff-appellant.

Jerdie D. Lewis, Shephen L. Trueblood, Terre Haute, Ind., Clelland J. Han-

ner, Rockville, Ind., for defendants-appellees.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Fairly analyzed, the question presented by this appeal is whether a public employee, who has no right to any procedural safeguards in connection with the termination of her employment, and who does not claim that she was terminated for a constitutionally impermissible reason, nevertheless is protected against "arbitrary and capricious" discharge by the concept of "substantive due process."

For three years plaintiff taught music and mathematics in an elementary school operated by defendants. In April, 1972, defendants notified her that her contract would not be renewed for the next succeeding year. She requested, and was given, a hearing before the School Board at which she was represented by counsel, and a written statement of reasons for the nonrenewal decision.[1] Having failed to persuade the defendants that her employment should be renewed, she brought this action pursuant to 42 U.S.C. § 1983. She makes no claim to tenure as a matter of state law, but does allege a violation of her constitutional rights because the defendants' decision was made "for reasons which are arbitrary and capricious, being wholly without basis in fact or in logic."[2] She

---

1. That statement read as follows:

"STATEMENT OF REASONS FOR NONRENEWAL OF 1972–73 TEACHER CONTRACT FOR MRS. DOROTHY JEFFRIES, BLOOMINGDALE ELEMENTARY SCHOOL:

(1) That on repeated occasions Mrs. Jeffries exhibited highly unethical conduct in her relationships with a fellow staff member, specifically, Miss Williams, which resulted in a loss of respect on the part of students for Miss Williams and which resulted in student behavioral problems for Miss Williams. By openly contradicting the directives given to students by Miss Williams, Mrs. Jeffries did in fact cause a disruption of the normal orderly school process for students and placed Miss Williams in a situation of duress from her students.

"(2) That in the early part of the school year, Mr. Ward Fritzen, Turkey Run Consolidated School District Music Director, expressed a concern that more time be alloted [sic] for instrumental music instruction in the Bloomingdale Elementary School. Whereupon, Mr. Fritzen and Bloomingdale Principal Davis agreed upon a schedule for Mrs. Jeffries which would have allowed additional time for such instrumental instruction. Upon being presented the revised schedule and upon being asked to follow such revised schedule, Mrs. Jeffries refused to follow the revised schedule. Mrs. Jeffries stated that she did not agree that the additional instructional time was needed and that following such a revised schedule would cause her to spend additional time at home in grading papers and in preparation for her other classroom duties. It should be pointed out that Mrs. Jeffries was not issued a direct order to follow the revised schedule but rather she was asked to do so willingly upon the recommendation of the Turkey Run Consolidated School District Music Director. However, her failure to comply with such a request and her disputing of the basis of a recommendation from a supervisor constitute a lack of cooperation, exhibits an unprofessional attitude, and reflects a neglect of duty in regards to the best interests of the students involved.

"Whereas the Turkey Run Consolidated School District School Board is legally charged with the duty of building up and maintaining an effective and efficient school system, it follows that this duty is therefore likewise the duty of those persons employed by the School Board and the School Board may reasonably expect its employees to carry out this duty to the best of their abilities. Whereas the preceding statements illustrate that Mrs. Jeffries has not fulfilled her responsibilities, within the scope of her abilities, to her duty of building up and maintaining an efficient school system, such preceding statements constitute good and just cause that Mrs. Jeffries' Teacher Contract for 1972–73 should not be renewed and that she be dismissed from employment by the Turkey Run Consolidated School District at the end of the 1971–72 school year." App. 11–12.

We agree with the district court's holding that plaintiff was not deprived of "liberty" by this statement of reasons. See Shirck v. Thomas, 486 F.2d 691 (7th Cir. 1973).

2. Complaint, paragraph 16.

prays for injunctive relief and damages of $25,000. In our opinion, Judge Dillin properly dismissed her complaint.

There are two aspects to plaintiff's attack on the Board action as "arbitrary and capricious." In part, she is attacking the written statement of reasons as either illogical or untrue; more fundamentally, she is attacking the actual decision of tł Board as illogical and lacking in reaso. . We consider the two aspects of her claim separately.

### I.

■ The Supreme Court's reversal of this court's decision in Board of Regents v. Roth,[3] makes it perfectly clear that plaintiff did not have a constitutional right to a hearing before the School Board in connection with its decision to terminate her employment. She had no tenure or other claim of entitlement to the position which would qualify as a property interest under the Court's reasoning in *Roth* and in Perry v. Sindermann.[4] Nor has she alleged an impairment of her "liberty" either by alleging sufficient facts to indicate that she was accused of dishonesty or immorality, or otherwise stigmatized, or by claiming that the termination of her employment was motivated by her exercise of rights protected by the Constitution or by a discriminatory purpose. Since she was not deprived of either "liberty" or "property," as those terms are used in the Fourteenth Amendment, she had no constitutional right to have the Board accord her procedural due process when it decided not to renew her contract. She had no constitutional right to a hearing and, as we understand *Roth*, no constitutional right to a written statement of the reasons for her discharge.

In our opinion, the questions whether a nontenured teacher, whose contract is not renewed, has any right to a statement of reasons or to judicial review of the adequacy or accuracy of such a statement are matters of state law, not federal constitutional law. There are sound policy reasons to support either a statutory requirement, or an administrative practice, that a complete and accurate written statement of the reasons for such an important decision be promptly delivered to the teacher. But since, by hypothesis, no constitutionally protected property or liberty. interest of the teacher is impaired by the Board's action, she has no federally protected right to a fair hearing or to a fair statement of reasons. The fact that a state, or a School Board, may voluntarily communicate more information to her, or receive more information from her, than the Constitution requires, is not in itself sufficient to create a federal right that does not otherwise exist.

A written statement of reasons may have great significance as evidence, for example, that a particular Board decision was motivated by a constitutionally impermissible reason. And, of course, an adequate statement by the defendants would not foreclose a claim that the Board was, in fact, motivated by a forbidden purpose. But the statement itself is just evidence, not an aspect of the state's legal process that is subject to federal supervision and control mandated by the United States Constitution.

### II.

Putting the statement of reasons to one side, plaintiff alleges that the Board decision was itself completely without basis in fact or logic, and argues that such. an arbitrary and capricious action violates her constitutional right to "substantive due process."

■ The claim that a person is entitled to "substantive due process" means, as we understand the concept, that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the

3. 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, reversing 446 F.2d 806 (7th Cir., 1971). The district court's opinion is reported at 310 F.Supp. 972 (W.D.Wis.1970).

4. 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

**4** 

deprivation may not be so inadequate that the judiciary will characterize it as "arbitrary." Since standards of "irrationality" or "arbitrariness" vary from time to time and from judge to judge, applications of the concept [5]—indeed, the concept itself [6]—have generated serious criticism of the judiciary and the judicial function. In this case we need not appraise the viability of the concept, or the extent to which it authorizes federal judges to impose their own views about what is "unrelated to the educational process or to working relationships within the educational institution" [7] upon locally elected school boards. For the same critical objection to any procedural due process claim by the plaintiff also forecloses her argument based on "substantive due process."

 The Fourteenth Amendment prevents the state from depriving any person of liberty or property without due process of law. As *Roth* squarely holds, the right to procedural due process is applicable only to state action which impairs a person's interest in either liberty or property. Certainly the constitutional right to "substantive" due process is no greater than the right to procedural due process. Accordingly, the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument. [8]

The cases upon which plaintiff relies are all readily distinguishable. In *Wieman*,[9] *Slochower*,[10] and *Hostrop*,[11] public employees were dismissed during the terms of their contracts; their property interests were therefore impaired. See *Roth*, 408 U.S. at 576–577, 92 S.Ct. 2701. Moreover, in each of those cases the dismissal impaired a protected interest in liberty.[12] Thus, for two reasons,

5. For example, in North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379, the Supreme Court referred to "that vintage of decisions which exalted substantive due process by striking down state legislation which a majority of the Court deemed unwise." 414 U.S. 164, 94 S.Ct. 412 (December 5, 1973). Although the recent decision in Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) may be characterized as a substantive due process holding, it is interesting to note that the Supreme Court carefully avoided use of that label.

6. The underlying objections to our use of the Fourteenth Amendment to prevent elected officials from deciding questions of economic policy are equally applicable to attempts to prevent elected officials from deciding other questions of social policy. Justice Holmes' pithy comment on substantive due process in his dissent in Truax v. Corrigan is not merely relevant to economic issues: "I must add one general consideration. There is nothing that I more deprecate than the use of the Fourteenth Amendment beyond the absolute compulsion of its words to prevent the making of social experiments that an important part of the community desires, in the insulated chambers afforded by the several states, even though the experiments may seem futile or even noxious to me and to those whose judgment I most respect." 257 U.S. 312, 344, 42 S.Ct. 124, 134, 66 L. Ed. 254.

7. See Drown v. Portsmouth School District, 451 F.2d 1106, 1108 (1st Cir. 1971).

8. At one point in her brief, plaintiff seems to argue that, entirely apart from her position as a teacher, as a citizen she has a "substantive right to be free from arbitrary and capricious governmental action." (At 17.) She does not identify the source of any such right, but necessarily must be contending that it is an interest in "liberty" protected by the Fourteenth Amendment. Of course, if it were, she would be entitled to procedural due process. In practical terms, if her argument were valid, every time a citizen was affected by governmental action, he would have a federal right to judicial review. In view of contemporary reluctance to embrace the concept of substantive due process, see n. 5, *supra*, it would be anomalous indeed to conclude that the same element— "freedom from arbitrariness"—should at once entitle a person to due process and also be a part of the process which is due. See dissenting opinion in Shirck v. Thomas, 447 F.2d 1025, 1028–1029 (7th Cir. 1971).

9. Wieman v. Updegraff, 344 U.S. 183, 73 S. Ct. 215, 97 L.Ed. 216.

10. Slochower v. Board of Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692.

11. Hostrop v. Board of Junior College District No. 515, 471 F.2d 488 (7th Cir. 1973).

12. If it is accurate to characterize those decisions as substantive due process cases, it

neither of which is applicable here, those employees were entitled to due process. Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 held that the denial of a license to practice law on the ground that the applicant is not of good moral character is a deprivation of liberty;[13] more narrowly, the Court held that such a denial must be supported by "evidence in the record which rationally justifies a finding that Schware was morally unfit to practice law."[14]

The cases from the First and Eighth Circuits on which plaintiff relies all stem from the analysis of the Due Process Clause in Judge Doyle's opinion in *Roth*, which was approved by a majority of this court but rejected by a majority of the Supreme Court. There is nothing in any of the opinions from those circuits explaining why the absence of either a property or liberty interest should not be fatal to a substantive as well as a procedural due process claim.[15] On the other hand, the reasoning which led to the conclusion that a public employee in plaintiff's situation is not entitled to a hearing before the School Board to determine whether there is any basis in fact for a nonrenewal decision applies equally to a claim that a federal court must conduct a hearing to make precisely the same determination.[16]

The judgment is

Affirmed.

should be noted that the concept affects the analysis of the property interest and the liberty interest in different ways. Thus, if an employee who has a property interest in his job is discharged for exercising a constitutional right, such a reason is impermissible and therefore the equivalent of no reason at all—he may then have been deprived of property without substantive due process. Alternatively, if attention is focused on his First Amendment rights, for example, and if he is discharged for speaking out on an issue of public importance, even without a property interest in his job, the discharge is tantamount to punishment, and therefore is a deprivation of an interest in liberty. Recognizing that some deprivations of liberty can be justified by reasons acceptable to the judiciary, see Pickering v. Board of Education, 391 U.S. 563, 569–570, 88 S.Ct. 1731, 20 L.Ed.2d 811, the absence of an acceptable justification may be characterized as a denial of substantive due process.

13. In *Roth* the Supreme Court described the holding in *Schware* as follows: "The Court has held, for example, that a State, in regulating *eligibility* for a type of professional employment, cannot foreclose a range of opportunities 'in a manner . . . that contravene[s] . . . Due Process.' Schware v. Board of Bar Examiners, 353 U.S. 232, 238, 77 S.Ct. 752, 1 L.Ed.2d 796, and, specifically, in a manner that denies the right to a full prior hearing. Willner v. Committee on Character, 373 U.S. 96, 103, 83 S.Ct. 1175, 10 L.Ed.2d 224" 408 U.S. at 574, 92 S.Ct. at 2707. (emphasis added).

14. 353 U.S. at 246–247, 77 S.Ct. at 760. Arguably, a requirement that the record must contain some evidence supporting a tribu-

nal's determination may properly be characterized either as "procedural" or as "substantive." *Cf.* Vajtauer v. Commissioner of Immigration in which the Court recognized that "deportation without a fair hearing or on charges unsupported by any evidence is a denial of due process." 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560. *Cf.* also Vachon v. New Hampshire, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed. 666 (1974).

15. In Drown v. Portsmouth School District, *supra* n. 7, the court quoted both decisions in this circuit in *Roth* in reaching its result. 451 F.2d at 1108. In McEnteggart v. Cataldo, 451 F.2d 1109, 1110–1111 (1971), the same court relied upon its decision in *Drown*. In Fisher v. Snyder, 476 F.2d 375, 377 (1973), the Eighth Circuit relied on *McEnteggart* for the proposition that a teacher may not be discharged for an arbitrary or capricious reason. The dicta in Cook County College Teachers Union, Local 1600, A.F.I. v. Byrd, 456 F.2d 882, 889 (7th Cir. 1972) similarly relied upon Judge Doyle's opinion in *Roth*.

Other circuits, also writing before *Roth*, suggested by way of dicta that a similar result should obtain. See Johnson v. Branch, 364 F.2d 177, 181 (4th Cir. 1966); Lucas v. Chapman, 430 F.2d 945, 948 (5th Cir. 1970). Dicta in a case involving a public employee who was not a teacher is similar. See Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161, 1164 (1969).

16. The dissenting opinion in Shirck v. Thomas, *supra*, n.8, pointed out that the original holdings in *Roth* necessarily rested on the same concept of substantive due process on which plaintiff relies in this case.