Mary Jane **PHILLIPPE** et al.

v.

**CLINTON-PRAIRIE SCHOOL CORP.** et al.

**No. IP 73-C-286.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

March 28, 1975.

J. Lynn Boese, Richard J. Darko, of Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for plaintiffs.

William P. Wooden, David T. Stutsman, of Wooden, Stark, McLaughlin & Sterner, Indianapolis, Ind., Allen A. Appleton, Frankfort, Ind., for defendants.

## ENTRY GRANTING DEFENDANTS' MOTION FOR DISMISSAL AT CLOSE OF PLAINTIFFS' EVIDENCE

NOLAND, District Judge.

This cause came on before the Court for trial without intervention of a jury on February 13, 14 and 17, 1975. At the close of the plaintiff's evidence, the defendants moved for dismissal pursuant to Federal Rules of Civil Procedure 41 (b) upon the ground that upon the facts and the law the plaintiffs had established no right to relief.

In making this determination, the Court had the benefit of listening to the entire case as presented by the plaintiffs through their witnesses and through the material stipulated into evidence by the parties.

The Court heard argument on the oral motion made by defendants; thereafter, the Court announced that it was granting the motions as made by the defendants, subject to a more extensive and written entry to follow:

1. Based upon the evidence presented by the plaintiffs, the Court considers that the plaintiffs went forward on Counts I, III and IV of their amended complaint.

2. The complaint should be dismissed as to the defendant Herbert Hoffman, Superintendent of Schools, for the reason that there has been a failure of proof as against said defendant since the actions complained of are considered

to be actions of the Board of School Trustees and its members rather than that of the Superintendent of Schools, Herbert Hoffman.

3. Count IV of Plaintiffs' complaint is hereby dismissed for the reason that there is a failure of proof that the plaintiff Suzanne Behmer was terminated on account of her physical and medical condition having to do with taking a leave of absence on account of pregnancy.

4. Counts I and III which apply to all three of the plaintiffs, Mary Jane Phillippe, Suzanne Behmer and Lawrence Smith, are also subject to dismissal for the reason that they do not state a cause of action for judicial review as a matter of federal constitutional law.

The Court makes this entry as required by the Federal Rules of Civil Procedure, Rules 41(b) and 52(a) and the memorandum of decision follows:

## MEMORANDUM OF DECISION

■ In considering the issues involved in this case, it must first be pointed out that each of the three plaintiffs were without tenure under the Indiana law. None of the plaintiffs had a contractual entitlement, either express or implied, to future employment. A teacher-employee does not acquire the substantive rights of statutory terms provided by Burns' Indiana Statutes, § 28–4501 et seq., IC 1971, 20–6–7–1, until such person serves more than five years continuously with the same school authority.

In making a ruling in this cause of action, the Court attempted to follow the teachings of the following cases, all of which had to do with the dismissal or termination of teachers who had no tenure under applicable state law. The controlling cases appear to be Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Miller v. School District, 495 F.2d 658 (7 Cir. 1974); Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1 (7 Cir. 1974); Shirck v. Thomas, 486 F.2d 691 (7 Cir. 1973).

Plaintiffs, through their well couched complaint, have set the stage for a constitutional confrontation between themselves and the Clinton-Prairie School Board. On the other hand, the School Board members view this matter as a simple exercise of discretion in weighing the relative merits of various school teachers and determining which ones should be retained and which ones should be released. As this Court views the Roth case, it is very similar to the instant case under consideration for the reason that in Roth a non-tenured university professor contended that he was not rehired because of his exercise of free speech, while the university authority apparently took the position that the dismissal was a constitutionally valid exercise of its discretion as to which university professors should be hired and fired.

As Chief Justice Burger said in his concurring opinion at 408 U.S. 604, at 92 S.Ct. 2717:

"That point is that the relationship between a state institution and one of its teachers is essentially a matter of state concern and state law."

The principal thrust of the contentions of all three plaintiffs is that they were denied constitutional rights under the First Amendment and Fourteenth Amendment. The First Amendment violations center around their contention that the termination as to each of the plaintiffs for the succeeding school year 1973–74 came about because of their vigorous activity as members of the Clinton-Prairie Classroom Teachers Association. On the other hand, the School Board gave each of the plaintiffs a letter setting forth the reasons for not offering a contract for the school year 1973–74 based on reasonable considerations. These reasons were contained in the minutes of the School Board which were duly recorded; and as to each of the plaintiffs were stated as follows:

*Mary Jane Phillippe:*

"The Board discussed the job requirements of the Guidance Department.

The Board expressed themselves that one area where they could reduce staff and costs was to combine the position of Guidance and teaching so that Guidance would be a half time position combined with a half-time teaching job.

We hope this provides you with the reasons for your not receiving a contract for the 1973–1974 school year."

*Laurence M. Smith:*

". . . as outlined in the Official Board Minutes of April 18, 1973 and April 24, 1973, which state that the Board discussed in great detail the Mathematics and Science Departments. Disappointment was expressed in the math teaching personnel.

At this point a motion was made to not renew your contract for another year."

*Suzanne Behmer:*

"Of course, you are aware of the present enrollment. If you will reread your letter, it stated the reasons: enrollment, financial conditions and grouping patterns available will not necessitate the employment of two teachers in the first grade."

▮▮▮ The Court is of the opinion that the following quotation from Jeffries v. Turkey Run Consolidated School District is applicable to the instant case:

"In our opinion the question whether a non-tenured teacher, whose contract is not renewed, has any right to a statement of reasons or to a judicial review of the adequacy or accuracy of such a statement are matters of state law, *not federal constitutional law*." (our emphasis) 492 F.2d at 3.

The Court in *Jeffries* went on to point out that:

"Since, by hypothesis, no constitutionally protected property or liberty interest of the teacher is impaired by the Board's action, she has no federally protected right to a fair hearing or to a fair statement of reasons." *Id.*

Thus, since an employee in plaintiff's position is not entitled to a hearing before the School Board to determine if there is any basis in fact for the non-renewal decision, such rule "applies equally to a claim that a federal court must conduct a hearing to make precisely this same determination."

The courts have recognized that school boards will sometimes be in error in their determinations. Miller v. School Board, 500 F.2d 711 (7th Cir. 1974). Further, as pointed out in *Miller:*

"Even on that assumption we are persuaded that the importance of allowing school boards sufficient latitude to discharge their responsibilities effectively . . . and inevitably, therefore, to make mistakes from time to time . . . outweighs the individual interest at stake."

*Id.* at 667.

Such latitude is necessary because of the school board's responsibility to the students and to the community from which the board is elected, "to select the people with whom it wants the minors of the community to associate as teachers." *Id.* at 667.

In the balancing of interests between the school teacher plaintiffs on the one hand and the school board defendants on the other, the Court was compelled to give consideration to the necessity of permitting duly elected school board members to exercise a reasonable amount of discretion in carrying out their duties.

The Indiana Appellate Court in the case of Tilton v. Southwest School Corporation, 281 N.E.2d 117 (1972) stated the matter thusly:

"In the meantime we conclude that no right to a hearing exists for a non-tenured teacher under Indiana Statute nor is such a right guaranteed by the due process clause of the Fourteenth Amendment, under the facts of the case at bar.

"We further conclude that the decision of a school board and the decision of

a trial court should not be disturbed except in cases where it is arbitrary and capricious, without reasonable basis or in direct violation of the Constitution.

"We will continue to protect the established and well defined constitutional rights of all teachers, tenured and nontenured, but will refrain from venturing into the political forum by inventing new rights, which may not be constitutional at all. Neither will we attempt to administer the schools of Indiana from this bench."

The issue is not whether the Court determines, from a preponderance of the evidence, that the decision of the Board was correct and proper. Rather, the question is whether there is any evidence to support the reasons given by the Board for non-renewal. Before the Court can disregard the stated reasons, the Court would have to find that the reasons stated were a sham and without any basis. On the basis of the evidence already submitted, the Court is satisfied, and accordingly finds, that there is a reasonable basis in fact for the decision of the Board. Such being the case, it would serve no useful purpose to hear further evidence herein. Whether or not the Court would make the same decision or thinks that the decision was the correct one is not a matter for the Court to determine. It is sufficient that plaintiffs' evidence demonstrates that there is at least some reasonable basis for the decision.

It is not the province of the Court to review or weigh the evidence relied upon by the Board in making this decision. Knarr v. Board· of School Trustees of Griffith, Indiana (N.D.Ind.1970), 317 F.Supp. 832, affirmed (7th Cir. 1972), 452 F.2d 649. In *Knarr*, the Court recognized the proper role of the Federal Courts in deciding cases alleging that a non-renewal decision was based upon constitutionally impermissible grounds:

"In determining whether to permit a teacher to attain permanent status, the latitude of discretion of a school board must necessarily be quite broad. 'We do not think it within the province of the federal court to pass upon and decide the merits of all of the internal operative decisions of a school district. * * * School boards are representatives of the people, and should have wide latitude and discretion in the operation of the school district, including employment and rehiring practices.' Freeman v. Gould Special School District of Lincoln County, Ark., 405 F.2d 1153, 1161 (8th Cir. 1969). Although the Court will not substitute its judgment for that of the school board, it must look to see whether the board has acted lawfully." (317 F.Supp. 832).

In the instant case, this Court does not pass on the ultimate correctness of the Board decision, but it does determine that the stated reasons were not a sham. Further, the Court finds the evidence introduced by plaintiffs shows that there was a proper basis for the teacher termination decisions.

## DISCUSSION OF THE EVIDENCE

The evidence establishes that staff reductions and enrollment considerations were under review before the Board reached any decisions as to renewal of · any teachers' contracts. Assistant Principal McGrew testified that studies of possible staff changes were being made by him and Principal Clark and that these included potential staff cuts and changes due to financial conditions and a change of emphasis from academic to vocational courses. With respect to Smith, consideration was given to replacing one teacher from the Math department in order to strengthen the staff; it was Principal Clark's judgment that the teacher to be replaced should be Smith.

Although Mr. Smith held licenses in social studies and English, his background was principally in Math and it is understandable that he would not be re-employed in areas other than in his main area, Math.

Assistant Principal McGrew also verified that consideration was being given to reducing the full-time counseling position held by Mrs. Phillippe and replacing it with a half-time counselor combined with the same person teaching an academic course half-time in the high school. Mrs. Phillippe's teaching license would not permit her to teach in the Clinton-Prairie Junior or Senior High School. Therefore, she was not available for consideration for a half-time teaching position in the Junior-Senior High School. In addition, she had not taught in a classroom for ten years which certainly could have led the Board not to consider her as a classroom teacher.

Staff reduction and realignment, testified to by McGrew, all occurred prior to the recommendations of Principal Clark to the Board on April 4, 1973. (Plaintiffs' Exhibit 29). Thus, the studies and recommendations with respect to Smith and Phillippe occurred prior to one of the major events relied upon by plaintiffs to show anti-union bias by the Board, the negotiation meeting between the teachers and the Board on April 19, 1973. The evidence establishes that at this meeting, after the Board notified the teachers that they would negotiate only as to salary and fringe benefits, the teacher negotiation committee walked out of the negotiation session. However, by this date, the recommendations and studies with respect to the Smith and Phillippe positions had already been made and the decision with respect to Behmer made. (Plaintiffs' Exhibit 30).

The evidence establishes that the decision not to renew the contract of Mrs. Behmer was reached solely due to a reduction in the number of teachers for the first grade at Mulberry Elementary School. The 1972–73 year began with one first grade teacher, Mrs. Behmer. She found it impossible to teach the size of class involved and as a result, at her request, an additional teacher, Lois Fredericks, was employed for the remainder of the 1972–73 school year.

The Board's letter to Mrs. Behmer granting her requested maternity leave (Plaintiffs' Exhibit 2) indicates that there was only one section of kindergarten at Mulberry Elementary School during the 1972–73 school year and that this would probably be true for the first grade at Mulberry the following year, 1973–74. The letter makes clear that staff evaluations and the probable need for only one first grade at Mulberry for 1973–74 would be the considerations which would determine whether or not she was renewed for the coming year. Since Mrs. Behmer had already established that it was impossible for her to teach a large class, it would not be an unreasonable conclusion by the Board that she should not be renewed as the one teacher for this assignment. It again is noted that the letter granting maternity leave (Plaintiffs' Exhibit 2) is dated March 30, 1973, once again before the sequence of events and the April 19 meeting upon which plaintiffs rely so heavily to establish anti-union animus by the Board.

At the time she was employed, Mrs. Behmer had a two year old child. At the time she advised the school of her pregnancy, in the fall of 1972, she was advised that this would not be any problem in connection with potential renewal. She asked for and was granted maternity leave. Therefore, the Court finds that there was no evidence to support Behmer's claim that her non-renewal was in any way related to her maternity leave or pregnancy or to the fact that she had children.

Plaintiffs have also failed to prove any connection between non-renewal of contracts and CTA activities. Plaintiffs have only shown that they were active in CTA activities and that there might have been a few problems during negotiations, a fact not uncommon during management-union negotiations. Under the state of facts shown by plaintiffs, any member of the CTA whose contract was not renewed could make the same allegation as plaintiffs.

There is a lack of proof that there was any direct causal link such as the link in one case cited by plaintiffs, Roberts v. Lake Central, (N.D.Ind.1970), 317 F. Supp. 63.

In the opinion of the Court there is a lack of substantial showing that the School Board terminated the plaintiffs on account of CTA activities. Further, the evidence tends to establish that the Board met in good faith with the union negotiating team and offered to discuss salary and fringe benefits. This offer was rejected by the CTA.

The Court also takes notice that Barbara Brooks was a non-tenured teacher who was a Vice President of CTA in 1972–73 and one who was again offered a teacher's contract for 1973–74 and 1974–75. She was also a member of the union negotiating team in 1972–73, and was equally active with the plaintiffs in CTA work. If the Board were acting out of anti-union motives, she should have been a prime candidate for non-renewal. See Knarr v. Board of School Trustees of Griffith, Indiana, *supra*. Plaintiffs placed great emphasis on evidence of disputes between the CTA and School Principal Martin and Superintendent Hoffman. Plaintiffs' evidence established that there had been other disputes as early as the 1969–70 year. It is worth noting that during the 1972–73 school year, the Board had no legal duty to negotiate with the CTA. (The Board had such a duty to negotiate with the teachers after January 1, 1974, on account of legislation enacted as Burns Ind.Stat.Anno., 28–4553; I.C.1971, 20–7.5–1–3). Nevertheless on April 11, 1973, the Board expressly recognized the Classroom Teachers Association (Plaintiffs' Exhibit 39) and expressed a willingness to negotiate wages and fringe benefits, although it was not legally required to do so. That the Board recognized the CTA and was willing to bargain with it, at a time when it had no legal duty to do so, shows an absence of anti-union bias. Therefore, the Court concludes that the defendants did not act with any bias against plaintiffs due to their union membership or activities in reaching their decision not to renew their contracts.

■ Thus, plaintiffs have not been denied liberty or property and have not been denied due process of law. Board of Regents of State Colleges v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; Shirck v. Thomas (7th Cir. 1973), 486 F.2d 691; Miller v. School District 167 (7th Cir. 1974), 495 F.2d 658; Jeffries v. Turkey Run Consolidated School District, *supra;* Suckle v. Madison General Hospital (7th Cir. 1974), 499 F.2d 1364; Adams v. Walker (7th Cir. 1974), 492 F.2d 1003.

■ There is an absence of proof of damage to the professional reputation of plaintiffs. Plaintiff Smith allowed his Indiana teaching license to expire and never applied for another teaching position with any other school corporation. Plaintiff Behmer has obtained every teaching position which she has sought since her employment was not renewed by defendant Board. Plaintiff Behmer was able to obtain a renewal of her Ohio license and obtain a new Idaho license since the matters involved herein and has been able to obtain a teaching position in both Ohio and Idaho. The only recommendation she has sought since non-renewal was in connection with obtaining an Idaho license. There is no evidence as to whether there was any delay in this recommendation or as to the actual content thereof. The only evidence is that the Idaho license was granted. Plaintiff Phillippe has not sought employment as a teacher with any other school corporation and has not sought any recommendation from any of the defendants. The Court finds there is no evidence to establish any damage to the professional reputations of plaintiffs. Neither has there been financial damage as a result of the decision of the Board.

In conclusion, the Court finds that:

1. The reasons stated for the Board's decision of non-renewal of plaintiffs'

teaching contracts were not a sham, but are supported by evidence, and the Court will not inquire further into the ultimate question of whether such decisions were necessarily correct.

2. The non-renewal of plaintiffs' teaching contracts was not based on their CTA activities.

3. Non-renewal of the Behmer's teaching contract was not based on her being pregnant or having children or requesting maternity leave.

4. Superintendent Hoffman did not make any recommendations which led to the non-renewal of the plaintiffs' teaching contracts.

5. Plaintiffs' professional reputation has not been damaged nor have plaintiffs suffered any financial damage.

6. Plaintiffs have not been denied liberty or property and have not been denied due process of law.