Steven RYAN et al.,
Plaintiffs-Appellants,

v.

AURORA CITY BOARD OF EDUCA-
TION et al., Defendants-Appellees.

No. 75–2067.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1976.
Decided Aug. 2, 1976.

John T. DeFazio, Green, Schiavoni, Murphy & Haines, Youngstown, Ohio, Jerry D. Anker, Lichtman, Abeles, Anker & Nagle, Washington, D. C., for plaintiffs-appellants.

James H. Woodring, John F. Lewis, John T. Meredith, Squire, Sanders & Dempsey, Cleveland, Ohio, John G. Burkholder, Means, Bichimer, Burkholder & Baker Co., Columbus, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and WEICK and ADAMS,* Circuit Judges.

PHILLIPS, Chief Judge.

This appeal presents the recurring problem of non-tenured teachers whose contracts of employment are not renewed and who claim due process rights under *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiffs Ryan, Miller, Felber and Touby were non-tenured public school teachers employed by the Aurora, Ohio, school system under limited contracts of varying duration, all of which expired at the end of the 1972–73 school year. On April 25, 1973, the Aurora City Board of Education (the Board), acting pursuant to § 3319.11 of the Ohio Revised Code,[1] voted not to renew their contracts.

Consistent with this statutory provision, the Board did not provide plaintiffs a hearing, nor did it give any reasons for its action. District Judge William K. Thomas concluded that the Board's regulations, which provided for written reasons to be given to the teachers whose contracts were not renewed, does not create an "expectancy of continued employment" where the teachers are non-tenured under Ohio law. We hold that a teacher who is non-tenured under state law does not have a "legitimate claim of entitlement" to continued employment within the meaning of *Roth* and *Sindermann.* Accordingly, we affirm the District Court.

I.

Plaintiff Steven Ryan had been employed in 1967 as a science teacher in the Aurora Middle School (grades 6, 7 and 8) on a one year contract. In 1968, he was re-employed on a five year limited contract. Plaintiff Joan Felver had been first employed to teach home economics in 1966 in the high school under a one year limited contract. Thereafter, she had been re-employed to teach the same subject on additional limited contracts for one year, two years, three years and one year. Plaintiff James Miller, hired first in 1968, had taught mathematics in the middle school under five successive one year limited contracts. Plaintiff Clair R. Touby had been employed in 1971 to teach music in both the high school and

---

* Honorable Arlin M. Adams, Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. Section 3319.11 provides in part as follows:
   Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, deemed re-employed under the provisions of this section at the same salary plus any increment provided by the salary schedule unless the employing board, acting on the superintendent's recommendation as to whether or not the teacher should be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April.

elementary school. He had two one year contracts.

During a specially scheduled public meeting on April 25, 1973, the Board took up the subject of the non-renewal of the plaintiffs' contracts. A two hour discussion followed in which the public participated. At the conclusion of the discussion the Board unanimously adopted the following resolution: "[It is moved that] consistent with section 3319.11 of the Ohio Revised Code, the [designated] teachers be notified that their contracts which expire at the conclusion of the 72/73 school year, not be renewed." In voting not to renew these contracts, the Board followed the recommendation of Superintendent of Schools Paul Snyder. Pursuant to § 3319.11 of the Ohio Revised Code, each plaintiff was given written notification before the 30th day of April, 1973. In a letter dated April 26, 1973, the Board's clerk-treasurer informed each plaintiff of the Board's: "intention not to re-employ you at the expiration of your current limited contract as teacher in the schools of this district consistent with Section 3319.11 of the Revised Code of Ohio."

Ohio, like many other states, has enacted statutes under which tenure rights may be conferred upon teachers after a period of probationary employment. In *Orr v. Trinter*, 444 F.2d 128 (6th Cir. 1971), *cert. denied*, 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972), in construing the same Ohio statutes that are before us in the present case, this court said:

> [W]e emphasize that an essential feature of State teacher tenure laws is to require a teacher to serve a probationary period before attaining the rights of tenure. State statutes prescribe the rights of tenured teachers to written charges, public hearings and judicial review. The determination as to whether the quality of services of a particular teacher entitles him to continued employment beyond the probationary period, thereby qualifying him for tenure status, or whether his contract of employment should not be renewed prior to attainment of tenure

status, is the prerogative of the employer, the Board of Education. 444 F.2d at 135.

Under Ohio Rev.Code § 3319.08, contracts for the employment of teachers are of two types, limited contracts (non-tenured) and continuing contracts (tenured). This section further provides:

> A continuing contract is a contract which shall remain in effect until the teacher resigns, elects to retire, or is retired pursuant to section 3307.37 of the Revised Code or until it is terminated or suspended and shall be granted only to teachers holding professional, permanent, or life certificates.

Section 3319.16 makes termination of any contract during its term subject to cause. Accordingly, since "continuing contracts" are of indefinite duration, this provision has the effect of conferring tenure on teachers with "continuing contracts."

Section 3319.11 defines requirements and procedures for renewal and non-renewal of limited contracts and for initially acquiring continuing contract status. The statute delineates only three situations recognized by Ohio law in which a teacher whose limited contract is about to expire can acquire a right to re-employment without action by the Board to offer continued employment. Limited contract teachers who meet eligibility requirements (e. g., years of service, appropriate teaching certification) for continuing contracts, have a right to re-employment on a continuing contract if: (1) the superintendent recommends a continuing contract and the Board fails to reject this recommendation by a three-fourths vote and to notify the teacher to that effect by April 30; or (2) the Board fails to send notice with reasons by April 30 of its action on a recommendation by the superintendent that the teacher be offered another limited contract rather than a continuing contract. A teacher employed under a limited contract, and not eligible to be considered for a continuing contract, can acquire a right of re-employment on a limited contract only if the Board fails to send written notice by April 30 (without reasons) of its decision

not to renew the teacher's limited contract. (Section 3319.11 quoted in n. 1.)

Appellants do not claim the above specific statutory tenure scheme confers rights on them. They assert, however, that the Board's regulations contained in a 1965 Policy Manual gave them a "property" interest in their jobs. Appellants rely on the following provisions of the Policy Manual to support their allegation of *implied* tenure:

2. *Chapter II. Instructional Personnel.*

A. Administrative Organization

. . . . .

2. Principals

. . . . .

(b) General Duties

. . . . .

(c) Specific Duties

. . . . .

(11) Hold at least one conference *and one classroom visit each year with teacher personnel*, in regard to their individual growth contribution to the educational program and making such suggestions for continuous improvement as necessary and reporting such conferences in writing to the conferees. *If a person's work is unsatisfactory, specific suggestions for improvement shall be made in the conference report.* Subsequent written reports shall confirm progress made and *provide a basis for reappointment.* The superintendent shall receive "The Teacher Evaluation Sheet" from the evaluation report for each teacher with the principal's recommendation for reappointment or dismissal by March 1 of each year. Any teacher recommended for dismissal must have been clearly informed of his status by the superintendent and completely aware that such a *recommendation is being made with definite reasons for same.*

*Chapter III. Duties and Responsibilities of Instructional Staff.*

. . . . .

4. Contracts

. . . . .

(e) Teachers who are *not to be reappointed shall be given the reasons* and notified in writing by the clerk-treasurer of the school district as confirmed by the board of education on or before April 30. Such written notice to the teacher on non-re-employment shall not be necessary provided that the teacher, after having consulted with the superintendent of the schools, shall give to the board of education before April 30 a letter asking that he not be reappointed. All teachers not so notified shall be considered reappointed. (emphasis added).

■ In *Orr* this court recognized that a due process hearing must be accorded a non-tenured teacher if his contract is not renewed because he exercised his rights of free speech as guaranteed by the first amendment; or if the non-renewal is in violation of the self-incrimination clause of the fifth amendment, the due process clause of the fifth or fourteenth amendment, or the equal protection clause of the fourteenth amendment. *Accord: Hatton v. County Board of Education*, 422 F.2d 457 (6th Cir. 1970); *Rolfe v. County Board of Education*, 391 F.2d 77 (6th Cir. 1968). We said: "These are constitutionally impermissible reasons for refusal to rehire a teacher." 444 F.2d at 134.

The present case, however, does not invoke a question of free speech, self-incrimination, or equal protection. Rather, the appellants are alleging a fourteenth amendment procedural due process violation on the argument that the Board's regulations have created a "property" interest in their employment under the authority of *Roth* and *Sindermann.* In particular, they argue the regulations of the board contain a clearly implied promise under *Roth*, 408 U.S. at 577, 92 S.Ct. 2701, that limited-contract teachers would be renewed unless there are valid reasons for nonrenewal, thereby creating a "property" interest in continued employment.

■ Section 1983 was never intended as a catch-all statute under which myriads of suits, traditionally within the exclusive jur-

isdiction of state courts, may be filed in the federal courts in the absence of a showing of deprivation of a constitutional right.[2]

■ It is the rule of this Circuit that judicial review in actions of school authorities involving the administration of State Teacher Tenure Laws is in the State courts,[3] not the federal courts, with the exception of cases involving deprivation of rights delineated by this court in *Orr*, as summarized above.

In *Coe v. Bogart*, 519 F.2d 10, 13 (6th Cir. 1975), this court, speaking through Judge Engel, said:

Coe also contends that Judge Taylor abused his discretion in refusing to consider his pendent claim under the Teacher Tenure Act. Although an analysis of Coe's federal claim required reference to Tennessee law, particularly the Teacher Tenure Act, we agree with Judge Taylor that a determination of the merits of that claim should be more appropriately made by the state courts. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

In *Manchester v. Lewis*, 507 F.2d 289, 291 (6th Cir. 1974), we said:

Manchester relies upon Mich.Comp. Laws Ann. § 38.83, which is part of the Teachers' Tenure Law of Michigan. He complains that some of the reasons assigned by school authorities for denying tenure occurred during his first year of employment as a probationary teacher.

---

2. One of the most recent applications by the Supreme Court of the "property" and "liberty" requirements of the fourteenth amendment appears in *Paul, Chief of Police of Louisville v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), rev'g, 505 F.2d 1180 (6th Cir. 1974). In that case the police department of the City of Louisville had distributed to merchants a flyer containing a picture of plaintiff and describing him as a "known shoplifter." The plaintiff had been arrested once for shoplifting but the charge had been "filed away" and never prosecuted. No court had ever found him guilty of shoplifting. The Supreme Court held that the plaintiff could not maintain an action under 42 U.S.C. § 1983 because the State law of Kentucky did not extend to plaintiff "any legal guarantee of present enjoyment of reputation." Under the rationale of that decision, assuredly the appellants in the present case, who have not been defamed in any way, but whose limited contracts were not renewed, with no recitation of reasons, have no right to maintain an action under § 1983, as they undertake to do in the present case.

The Supreme Court said in *Paul*:

Kentucky law does not extend to respondent any legal *guarantee* of present enjoyment of reputation which has been altered as a result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" *guaranteed* against state deprivation without due process of law.

Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause. (Emphasis added.) 424 U.S. at 711–712, 96 S.Ct. at 1166.

The State law of Ohio does not guarantee to plaintiffs, who are non-tenured teachers, any right to a hearing of "statement of reasons" as a prerequisite to non-renewal of a contract of employment.

3. The Supreme Court further held in *Paul* that if plaintiff had a right of action his remedy was a suit for defamation in the State courts of Kentucky, and not a suit in the federal courts under § 1983. The Court said:

Respondent brought his action, however, not in the state courts of Kentucky but in a United States District Court for that State. He asserted not a claim for defamation under the laws of Kentucky, but a claim that he had been deprived of rights secured to him by the Fourteenth Amendment of the United States Constitution. Concededly if the same allegations had been made about respondent by a private individual, he would have nothing more than a claim for defamation under state law. But, he contends, since petitioners are respectively an official of city and of county government, his action is thereby transmuted into one for deprivation by the State of rights secured under the Fourteenth Amendment.

Review of actions of school authorities under the Teachers' Tenure Law of Michigan is the prerogative of the courts of that State and not of the federal judiciary. Jurisdiction cannot be conferred on federal courts by the procedural device of filing an unsubstantial action under § 1983 and relying on the doctrine of pendent jurisdiction. *Bates v. Dause, supra,* 502 F.2d at 867. In this § 1983 action determination of whether the constitutional rights of Manchester were violated is not controlled by § 38.83.

In *Bates v. Dause,* 502 F.2d 865, 867 (6th Cir. 1974), we said:

An action was brought against the Superintendent of Schools and certain members of the Board of Education in their individual capacities under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. By amendments to the pleadings, plaintiffs also asserted that their claims under the State Teachers' Tenure Statute were cognizable in federal court on the theory of pendent jurisdiction. The District Court assumed pendent jurisdiction and rendered judgments of $5,948 in favor of one principal and $8,175 in favor of the other, against the Superintendent of Schools and four members of the Board of Education, all in their individual capacities.

We reverse on the ground that the record shows no deprivation of any rights, privileges or immunities of appellees secured by the Constitution and laws of the United States so as to support an action under § 1983; and that, since the federal claim does not have substance sufficient to confer subject matter jurisdiction on the District Court, that court erred in assuming pendent jurisdiction under the Kentucky Teachers' Tenure Act and the common law of Kentucky.

．　　．　　．　　．　　．

This statute should be administered by the Courts of the Commonwealth of Kentucky, and not by the federal judiciary. Transfer of jurisdiction to federal courts cannot be accomplished by the procedural device of filing an unsubstantial action under § 1983, coupled with a prayer for exercise of pendent jurisdiction. (Footnote omitted.)

▮▮▮ A non-tenured teacher may acquire an "expectancy" of continued employment where "the policies and practices of the institution" rise to the level of implied tenure. *See, Sindermann,* 408 U.S. at 603, 92 S.Ct. 2694; *Patrone v. Howland Board of Education,* 472 F.2d 159, 160 (6th Cir. 1972); *Lukac v. Acocks,* 466 F.2d 577, 578 (6th Cir. 1972). We hold, however, that a non-tenured teacher has no "expectancy" of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system. *See Patrone,* 472 F.2d at 160–61; *Lukac,* 466 F.2d at 578; *Orr,* 444 F.2d 132–33.[4] *See also Blair v. Board of Regents,* 496 F.2d 322 (6th Cir. 1974). Since property interests are created by state law and not the Constitution, *Roth* at 577, 92 S.Ct. 2701, the fact that the State limits the guarantee to only tenured teachers, necessarily negatives any property interest.

This conclusion is supported by the Supreme Court's decision in *Sindermann.* There the Court stated the effects of a state law tenure system upon a claim of entitlement to implied job tenure:

We do not now hold that the respondent has any such legitimate claim of entitlement to job tenure. For "[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source *such as state law* . . . ." *Board of Regents v. Roth, supra,* 408 U.S., at 577 [92 S.Ct. 2701, at 2709]. *If it is the law of Texas*

---

4. *Patrone, Lukac* and *Orr* involved the same statutory section before us on this appeal—Ohio Rev.Code § 3319.11. In each of those cases we held that the non-tenured plaintiffs had no expectancy of continued employment. Although these decisions relied upon the lack of evidence which might be construed to establish an expectancy of continued employment, the existence of a statutory tenure system was an additional factor which negatived any "expectancy."

*that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated.* 408 U.S. at 602 n. 7, 92 S.Ct. at 2700. (Emphasis added.)

The fact that Ohio already has an explicit tenure policy obviates the need, which existed in *Sindermann*, to supply one by implication.

■ The Supreme Court recently stated in *Bishop v. Wood*, —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), that the sufficiency of a claim of entitlement to a property interest in employment must be decided by a reference to state law even if the entitlement is based on an implied contract theory. —— U.S. ——, 96 S.Ct. 2075.

Appellants rely upon the opinion of this court in *Soni v. Board of Trustees of the University of Tennessee*, 513 F.2d 347 (6th Cir. 1975). *Soni* has no application in the present case; it involved a factual situation distinctly different from the facts of the case at bar.

## II.

■ Plaintiffs contend that even if they are not entitled to a hearing under the authority of *Roth* and *Sindermann*, they at least are entitled to the protections prescribed by the Board's own regulations. They complain that the Board did not adopt any statement of "reasons" for its action, and did not give any "reasons" in its notice of non-renewal, as required by its rules.

In an opinion by Circuit Judge John Paul Stevens in *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1 (7th Cir. 1974), the court held that a non-tenured teacher can be dismissed for no stated reasons, or for voluntarily offered reasons unsupported by factual evidence, without violating due process:

> In our opinion, the questions whether a nontenured teacher, whose contract is not renewed, has any right to a statement of reasons or to judicial review of the adequacy or accuracy of such a statement are *matters of state law, not federal constitutional law.* There are sound policy reasons to support either a statutory re-

quirement, or an administrative practice, that a complete and accurate written statement of the reasons for such an important decision be promptly delivered to the teacher. *But since, by hypothesis, no constitutionally protected property or liberty interest of the teacher is impaired by the Board's action, she has no federally protected right to a fair hearing or to a fair statement of reasons.* The fact that a state, or a School Board, *may voluntarily communicate more information to her, or receive more information from her, than the Constitution requires, is not in itself sufficient to create a federal right that does not otherwise exist.*

> A written statement of reasons may have great significance as evidence, for example, that a particular Board decision was motivated by a constitutionally impermissible reason. And, of course, an adequate statement by the defendants would not foreclose a claim that the Board was, in fact, motivated by a forbidden purpose. *But the statement itself is just evidence, not an aspect of the state's legal process that is subject to federal supervision and control mandated by the United States Constitution.*

> Putting the statement of reasons to one side, plaintiff alleges that the Board decision was itself *completely without basis in fact or logic,* and argues that such an arbitrary and capricious action violates her constitutional right to "substantive due process."

> .    .    .    .    .

> *For the same critical objection to any procedural due process claim by the plaintiff also forecloses her argument based on "substantive due process."* (Emphasis added.) 492 F.2d at 3–4.

*Accord, Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196 (8th Cir. 1974). We agree with the reasoning of the Seventh Circuit. The fact that the Board may voluntarily offer "reasons" by its policies does not in itself create a federal right that does not otherwise exist. No matter what provision may have been contained in the

Board's regulations with respect to "reasons" for non-renewal of the contracts of plaintiffs there would be no right to substantive due process under the *Jeffries* decision.

We agree with the opinion of Judge Thomas in the present case that:

A school board may not limit its exercise of its admitted statutory power under section 3319.11 not to re-employ a teacher on limited contract, by self-imposing a requirement that it give written reasons for nonrenewal in addition to the sole statutory requirement that the board give written notice of nonrenewal before April 30. To condition the Board's exercise of its power under section 3319.11 on the giving of reasons in effect would make the termination of a teacher, employed under a limited contract, subject to cause. But only teachers who have tenure are entitled to an expectancy of employment terminable only for cause. As earlier explicated the first paragraph of Ohio Rev.Code § 3319.11 fixes the tenure procedures for teachers in Ohio's public schools. Patently no board of education has the authority or power to enlarge the limits of teacher tenure beyond those limits. Indeed, the Aurora School District policy book, on which plaintiffs rely, frankly and correctly concedes,

In developing rules and regulations, it cannot adopt standards which enlarge its authority or that of its employees beyond the statutory limits.

This is in accord with the decision of this court in *Orr*, where we said:

In the present case Orr seeks to persuade this court to render a decision which would confer certain tenure privileges upon non-tenured teachers—in effect to amend the Ohio statute by judicial decree. This we decline to do. 444 F.2d at 135.

As stated in *Jeffries*, the statement of reasons and their adequacy or accuracy are matters of state law, not federal constitutional law. *See also, Coe v. Bogart*, 519 F.2d 10, 13 (6th Cir. 1975); *Manchester v. Lewis*, 507 F.2d 289, 291 (6th Cir. 1974);

*Bates v. Dause*, 502 F.2d 865, 867 (6th Cir. 1974).

Accordingly, the decision of the District Court is affirmed.