**Carol MOSOLYGO, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**Jim EDGAR, Illinois Secretary of State, Defendant.**

**No. 85 C 5450.**

United States District Court, N.D. Illinois, E.D.

July 1, 1985.

James R. Potter, Kinoy, Taren, Geraghty & Potter, Chicago, Ill., for plaintiff.

Roger P. Flahaven, Illinois Atty. General's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Plaintiff Carol Mosolygo ("Mosolygo") brings this civil rights [1] class action against defendant Jim Edgar ("Edgar"), the Illinois Secretary of State, alleging that Edgar's refusal to remove the suspension of her drivers license violates her due process rights under the United States Constitution. This matter first came before the Court on Mosolygo's motion for a temporary restraining order or preliminary injunction. After hearing argument of counsel, the Court ordered the parties to file briefs in support of their positions and ruled that Mosolygo's motion would be considered a request for permanent injunctive relief. For the reasons set forth below, Mosolygo's motion for a permanent injunction is granted.

As the Secretary of State, Edgar is charged with administering and enforcing the provisions of the Illinois Vehicle Code, Ill.Rev.Stat. ch. 95½, ¶¶ 2–101 to 9–110. On both October 6, 1983 and May 2, 1984, Edgar suspended Mosolygo's drivers license pursuant to Ill.Rev.Stat. ch. 95½, ¶ 6–306.1, after the Clerk of the Cook County Circuit Court had notified Edgar that an arrest warrant was outstanding against Mosolygo for ten or more parking violations.[2]

Mosolygo correctly does not challenge the propriety of Edgar's initial acts of suspension. What she complains of in this suit is Edgar's refusal to rescind the suspensions after the warrants on which they were based were quashed. On June 6, 1984, the presiding judge of the First Municipal District of the Circuit Court of Cook County issued General Order No. 84–5. That order states, in its entirety:

> EFFECTIVE IMMEDIATELY, all warrants covering state, county and municipal ordinance violations punishable by fine only are hereby recalled and quashed.
>
> IT IS HEREBY ORDERED, That this order be spread upon the records of this Court.

Mosolygo asserts that the maximum penalty for the parking violations relating to her warrants is a $200 fine, thus bringing her within the scope of General Order No. 84–5.[3] Because the warrants underlying the suspension of her drivers license have been quashed, Mosolygo argues that Edgar's continuing refusal to rescind the suspensions is "lawless and arbitrary and constitutes a substantive due process violation." [4]

---

1. Mosolygo brings this suit under 42 U.S.C. § 1983 and asserts jurisdiction pursuant to 28 U.S.C. § 1343(3).

2. Paragraph 6–306.1(a) provides:

   The Secretary of State, upon receipt of a form prescribed by him advising him that there is a warrant outstanding in any one county in Illinois for the arrest of a violator for ten or more parking violations, or there are 2 or more warrants outstanding in any one county in Illinois for the arrest of a violator of regulations relating to the movement of traffic, shall immediately suspend the drivers license of said violator without a hearing, and shall not remove such suspension, nor issue any license or permit to said violator until notified by the Clerk of the Court in said county that the violator has appeared and satisfied the outstanding warrant against him.

3. Edgar does not dispute Mosolygo's assertion that the parking violations are punishable by fine only.

4. Mosolygo also argues that her *procedural* due process rights have been violated. She concedes that a pre-suspension hearing is not constitutionally required, *see Dixon v. Love*, 431 U.S. 105, 113–15, 97 S.Ct. 1723, 1727–29, 52 L.Ed.2d 172 (1977), but she claims that she is effectively denied a *post*-suspension hearing as well because she is no longer required to appear in court on the warrants which have been quashed. We disagree. Ill.Rev.Stat. ch. 95½, ¶ 2–118 provides for a prompt post-suspension hearing upon Mosolygo's request, regardless of the existence of any warrants.

   However, we disagree with Edgar's assertion that injunctive relief would be inappropriate here because Mosolygo has not yet sought a hearing under ¶ 2–118. She has already made her position clear to Edgar and could produce no new evidence at a hearing; likewise, Edgar has already stated that he need not (and, in fact, cannot) remove the drivers license suspensions solely because of General Order No. 84–5. Thus, a ¶ 2–118 hearing would be futile under these circumstances, and the Court may properly decide the constitutionality of Edgar's refusal to remove the suspensions.

■ There is no question that the Due Process Clause applies to the deprivation of a drivers license by a state. *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). Moreover, the Seventh Circuit has recognized that arbitrary state action depriving a person of life, liberty or property may constitute a substantive due process violation. *See United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 445 n. 28 (7th Cir.1982); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 3–4 (7th Cir.1974). Thus, we must decide whether Edgar's refusal to remove the drivers license suspensions is arbitrary or objectively reasonable.

Edgar claims that the state statute prohibits him from removing the drivers license suspensions in this case. Edgar relies on the language in ¶ 6–306.1 that he *"shall not* remove such suspension ... until notified by the Clerk of the Court in said county that the violator has appeared and satisfied the outstanding warrant against him" (emphasis added). Because he has not received notice *from the court clerk* that *Mosolygo or any other particular individual* related to this case has satisfied a warrant, Edgar feels his inaction is justified.

■ We disagree. Although, as Edgar argues, "the statute specifically contemplates a notice from the court clerk," ¶ 6–306.1 only contemplates situations in which the alleged parking violator has an opportunity to appear in court and satisfy any outstanding arrest warrant. The statute makes no provision for circumstances such as this, where the arrest warrants are recalled by the circuit court and are no longer able to be satisfied by the individual's court appearance.[5] Accordingly, we hold that ¶ 6–306.1 does not apply to this situation and therefore does not restrict Edgar's ability to remove the drivers license suspensions.

There is no doubt that Edgar received notice of General Order No. 84–5. Edgar asserts that he never received notice of the order from the Clerk of the Cook County Circuit Court, but such notice was not required since ¶ 6–306.1 does not govern this situation. Edgar *was* notified of the order by Mosolygo—through both this lawsuit and earlier correspondence—and persons in Edgar's office even discussed the order with various Cook County judges and law enforcement personnel.

■ The remaining question is whether General Order No. 84–5 is sufficient to require removal of the drivers license suspensions. We agree with Mosolygo that it is. Edgar argues that Mosolygo has failed to obtain an order directed specifically to her. However, such an order is unnecessary because the general order clearly applies to her. Edgar is directed by ¶ 6–306.1 to suspend a drivers license only when an arrest warrant has been issued for the driver. General Order No. 84–5 unquestionably eliminates this sole statutory basis for suspending Mosolygo's license.

The absurdity of Edgar's position in this case is illustrated by his argument that by removing the drivers license suspensions he would be making "an independent judgment as to the force and effect of an arrest warrant issued by the circuit court." Edgar states that "[a] state administrative agency, of course, is an inferior judicial tribunal to the circuit courts. Thus, it is reasonable for the Secretary to refuse to independently nullify a warrant issued by a superior tribunal." But by refusing to recognize the effect of General Order No. 84–5 and remove the drivers license suspensions, Edgar is doing precisely what he says he may not do. This Court, however, will not permit him "to refuse to independently nullify" an order "issued by a superior tribunal."

In short, we find that Edgar's action depriving Mosolygo and others of their

---

5. Indeed, the act of recalling and quashing the warrants is essentially the "satisfaction" of the warrants.

drivers licenses is indeed arbitrary and without any rational basis. Accordingly, Mosolygo's motion for a permanent injunction is granted—the Court mandatorily enjoins Edgar to remove the drivers license suspensions of those persons whose arrest warrants were quashed by General Order No. 84–5.[6] It is so ordered.

---

**6.** None of the foregoing should be interpreted as an overabundance of sympathy on the part of the Court for drivers who repeatedly violate parking ordinances. *See Grant v. City of Chicago,* 594 F.Supp. 1441 (N.D.Ill.1984) (upholding constitutionality of City's use of "Denver boot"). Such drivers interfere with the state's efforts to maintain safe and efficient roads, and their driving privileges may certainly be restricted. But in dealing with this problem, Edgar is constrained to follow the relevant statutes and any applicable court orders. General Order No. 84–5 is quite broad—and if it signals that the circuit courts will no longer issue arrest warrants for recidivist parking violators, then ¶ 6–306.1 needs to be replaced by a statute which does not base drivers license suspensions on arrest warrants. However, it is not the role of this Court to rewrite outdated Illinois statutes; that is a task for the state legislature.