Robert Allen **DERRY** and Brenda Lynn Derry, Plaintiffs,

v.

**MARION COMMUNITY SCHOOLS,** Dr. Jeff Hendrix, Superintendent, and Marion Community Schools School Board, Defendants.

Cause No. 1:08–CV–187–TLS.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 12, 2008.

---

Shane Eric Beal, Marion, IN, for Plaintiffs.

Cathleen M. Shrader, Barrett & McNagny LLP, Fort Wayne, IN, Judy L. Woods, Michelle L. Cooper, Susan Traynor Chastain, Bose McKinney & Evans LLP, Indianapolis, IN, for Defendant.

## OPINION AND ORDER

THERESA L. SPRINGMANN, District Judge.

This matter is before the Court on an Application for Preliminary Injunction and Restraining Order [DE 1], filed by the Plaintiffs on August 6, 2008, in Grant Superior Court, and a Motion for Summary Judgment [DE 14], filed by the Defendants on September 15, 2008.

## BACKGROUND

Even though the uniform policy that is the subject of this lawsuit was adopted on May 28, 2008, and was publicized soon thereafter, the Plaintiffs did not file their Application for Preliminary Injunction and Restraining Order [DE 1] until August 6, 2008. Along with their Application, the Plaintiffs filed an Affidavit and Motion for Temporary Restraining Order. Counsel for the Plaintiffs certified that he sent the Affidavit and Motion for Temporary Restraining Order via facsimile to Dr. Hendrix and via mail to the administration building of Marion Community Schools. In their Application for Preliminary Injunction, the Plaintiffs claim that the uniform policy adopted by the Defendants for McCulloch Middle School requires the Plaintiffs, who are the parents of two students at that school, to purchase uniforms for their children and that these costs place an undue burden on their family. The Plaintiffs also claim that the policy deprives the families of McCulloch Middle School students of the same education at the same cost as students at other schools in the district and that the Plaintiffs will suffer irreparable harm if the policy goes into effect, causing them to purchase the uniforms. The Plaintiffs also contend that the policy violates the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. On August 8, 2008, the Defendants removed the action to this Court, premising this Court's subject matter jurisdiction upon federal question jurisdiction under 28 U.S.C. § 1331.

On August 11, 2008, the Court conducted a telephone motion conference with the parties. Because the Defendants had received notice, the Court indicated that the Plaintiffs' request for a temporary restraining order was no longer an issue and that the parties should confer and agree to a schedule for discovery, briefing, and a hearing on the Plaintiffs' Application for Preliminary Injunction. The parties indicated that, although school started on August 11, 2008, there was a "grace period" until September 2 for students to comply with the uniform policy.

On August 12, 2008, the parties submitted via email a Proposed Scheduling Entry, part of which was docketed as Motion Scheduling Entry [DE 10], but the Plaintiffs' and the Defendants' Proposed Scheduling Entry [DE 19] was not formally filed until September 24, 2008. In their joint Scheduling Entry, the parties clarified the Plaintiffs' claims as follows:

[T]hey are being denied equal protection and due process under the Fourteenth Amendment of the United States Constitution because the Marion Community Schools intends to implement a uniform policy through a pilot program in one school building instead of immediately implementing the uniform policy in all school buildings throughout the School Corporation. The Plaintiffs are also alleging that the uniform policy violates the equal opportunity for education poli-

cy set forth in Indiana Code 22–9–1–2. The Plaintiffs are not claiming that they cannot financially afford to purchase school uniforms for their children.

(Scheduling Entry, DE 19, at 1.) The parties also agreed that the students would not be penalized for violations of the uniform policy prior to October 3.

On August 12, the Court conducted a telephone scheduling conference with the parties and adopted the parties' discovery and briefing schedule. The Court scheduled a hearing for September 30 to receive evidence and to hear argument on the Plaintiffs' Application for Preliminary Injunction. The Court indicated that the posting of security pursuant to Federal Rule of Civil Procedure 65(c) would also be addressed at the time of the hearing.

The parties were to submit written discovery by August 15 and responses to written discovery by August 27. Depositions were to be taken by September 5. On September 15, the Defendants filed a Motion for Summary Judgment [DE 14] together with a Memorandum in Support [DE 15] and evidentiary materials. On September 23, the Plaintiffs filed their Designation of Evidence [DE 16], Motion and Memorandum of Law in Opposition [DE 17], and a Declaration of Robert Allen Derry [DE 18]. On September 24, the Defendants filed a Reply in Support of their Motion for Summary Judgment [DE 20].

On September 30, the Court conducted a hearing at which the parties indicated they had no evidence or argument to present in addition to the evidence and argument presented in the Motion for Summary Judgment and related briefing. The parties agreed that the Defendants would withhold implementing the uniform policy until October 14. The Court directed the parties to file a joint stipulation of facts and their proposed conclusions of law.

On October 3, the parties filed Plaintiffs' and Defendants' Joint Stipulation of Material Facts not in Dispute [DE 23]. On October 6, the Plaintiffs filed their Proposed Findings [DE 25], and the Defendants filed their Proposed Conclusions of Law [DE 26].

## PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT STANDARDS

In order to obtain a preliminary injunction, the Plaintiffs must make four threshold showings: (1) that they are reasonably likely to succeed on the merits; (2) that they will suffer irreparable harm that outweighs the harm that the nonmoving parties will suffer if the injunction is granted; (3) that there is no adequate remedy at law; and (4) an injunction will not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir.2006). As to the first factor, the plaintiff's likelihood of success on the merits, the Seventh Circuit has instructed:

In the first phase of the analysis, the court decides only whether the plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning—but in the second phase, the court evaluates that likelihood of success as the analysis turns to a "sliding scale" under which a lesser likelihood of success can be made sufficient by a greater predominance of the balance of harms. In performing this balancing, the court bears in mind that the purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.

*AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir.2002) (internal citations and quotation marks omitted). In granting a preliminary injunction, a court does not render "a decision on the merits of the plaintiff's suit"; rather, such

a decision reflects a determination that "the suit has enough merit—which need not be great—to justify an order that will freeze the situation, in the plaintiff's favor, for such time as it may take to determine whether the suit is, or is not, meritorious." *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir.1997). If the plaintiff meets the threshold burden to demonstrate the four factors, the court must weigh the factors against one another in a sliding scale analysis, which is to say the court "must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Soc'y*, 453 F.3d at 859 (internal citation omitted).

As for motions for summary judgment, the Federal Rules of Civil Procedure mandate that such motions be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). To determine whether any genuine issue of fact exists, a court must pierce the pleadings and assess the

proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir.2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir.2000). A court should consider how a trier of fact could view the evidence, "constru[e] the record in the light most favorable to the nonmovant[,] and avoid[ ] the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.2003) (noting the often repeated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## STATEMENT OF FACTS

On May 28, 2008, Marion Community Schools adopted a uniform policy for McCulloch Middle School that sets forth specific requirements for student dress at

the school. (Joint Stip. of Mat. Facts ¶¶ 1–2.)[1] The policy mandates certain colors and types of clothing, including button up golf/polo shirts of any solid color that have no visible labels or logos; khaki, navy blue, or black pants, shorts, capri pants, or skirts that have a button waste and front zipper, no visible labels or logos, and no rips, holes, designs, or extra pockets/zippers; knee-length or longer shorts and skirts; belts in any color with pants and shorts; sandals, tennis shoes, or dress shoes in any color; solid color cardigan sweaters that have no logos or designs and are worn over an approved collared shirt and with the collar extended over the neckline; and approved McCulloch Spirit Wear clothing. (Joint Stip. of Mat. Facts ¶ 3.) The policy restricts certain clothing, including hoodies, denim clothing, clothing altered with slits, holes, and markings, and scarves, bandanas, buttons, and accessories that identify or signify gangs or are otherwise disruptive. (Joint Stip. of Mat. Facts ¶ 4.) The policy provides for exceptions in certain circumstances, including for exceptional physical conditions or religious affiliations. (Joint Stip. of Mat. Facts ¶ 5.)

Parents are generally responsible for providing clothing, including school clothing, for their children. (Joint Stip. of Mat. Facts ¶ 7.) The policy neither requires any parent or student to purchase uniforms nor mandates students to have a minimum number of any item or set of clothing. (Joint Stip. of Mat. Facts ¶ 9.) The policy does not require specialized clothing; instead, it requires clothing of a type that many students would already possess and could readily acquire from a range of different sources and stores in the Marion area. (Joint Stip. of Mat. Facts ¶¶ 11–12.) Under the policy, parents and students may acquire used or no-cost clothing that complies with the policy, including a free uniform provided by Marion Community Schools to each student, or students may wear clothing already possessed by their families that complies with the policy. (Joint Stip. of Mat. Facts ¶¶ 6, 9.) Additionally, Marion Community Schools has taken steps-such as obtaining grants and donations from local businesses, clothing vendors, and community leaders, arranging for local churches to purchase clothing for students, securing a $5000 donation from Walmart, and contacting local thrift stores—to assist families in obtaining free or inexpensive clothing that complies with the policy. (Joint Stip. of Mat. Facts ¶¶ 13–20.) The policy does not restrict or prohibit any student from wearing uniform clothing while away from school and does not mandate that parents and students maintain two separate wardrobes for students, one to be worn at school and one away from school. (Joint Stip. of Mat. Facts ¶ 10.)

The Defendants adopted the policy as a pilot program to address student behavior and academic performance issues at the school. (Joint Stip. of Mat. Facts ¶ 21.) In the last three school years, there have been over 3000 disciplinary referrals in a student body of approximately 463 students, and McCulloch Middle School is a low-performing urban school that has not made Adequate Yearly Progress in five years. (Joint Stip. of Mat. Facts ¶¶ 22–23.) The staff at the school are trying to do what they can to make a positive difference in students' lives and to improve stu-

---

1. In their Joint Stipulation of Material Facts not in Dispute [DE 23], the parties stipulate to most of the material facts. As a result, few facts are in dispute, and no material fact is disputed. Additionally, the parties in their Joint Stipulation have provided citations to specific evidentiary materials that provide the basis for most of the stipulated facts. For purposes of brevity, the Court will cite to relevant paragraphs in the parties' Joint Stipulation, rather than to the specific evidentiary materials submitted by the parties.

dent academic performance. (Joint Stip. of Mat. Facts ¶ 21.) Before implementing the policy, the Defendants formed a uniform policy committee (with student, parent, and staff involvement) that conducted research, and the committee and the Defendants received positive feedback regarding uniform policies at other schools. (Joint Stip. of Mat. Facts ¶¶ 26–28.) The research on school uniforms showed that uniforms help to prevent gang-related clothing issues, that students focus more on learning than on making a fashion show, that students who do not wear trendy fashions are not bullied, that uniforms help to level the playing field between students who can and cannot afford brand name clothing, that uniforms build a sense of community, that administrators do not have to function as fashion police, and that uniforms reduce student distractions caused by inappropriate clothing. (Joint Stip. of Mat. Facts ¶¶ 28.) The Defendants believe the uniform policy will make a positive difference in students' lives, help to improve student performance and academic achievement, help to instill discipline in the students, help to prepare students to be successful, productive citizens, help to teach students how to "dress for success," and help to achieve the outcomes indicated by the research. (Joint Stip. of Mat. Facts ¶¶ 25, 29–30.)

On September 27, 2007, the School Board conducted a public meeting at which the idea of adopting a uniform policy was discussed, and Defendant Marion Community Schools held three "open mic" public meetings for parents, students, and community members to share their views regarding the policy. (Joint Stip. of Mat. Facts ¶ 31.) Plaintiff Brenda Lynn Derry attended two uniform policy committee meetings because she has "always favored uniforms if done fairly and appropriately." (Joint Stip. of Mat. Facts ¶¶ 32–33.) Plaintiff Robert Allen Derry attended one "open mic" public meeting, and at that meeting, he expressed his view that the uniform policy was not needed because "the problem was with the parents who allowed their children to go to school with clothing on that was too large or too small and that kids were not dressed appropriately and the school officials did not have the fortitude to confront them." (Joint Stip. of Mat. Facts ¶¶ 32, 34.)

On May 14, 2008, at a public meeting, the School Board received a report regarding data and information collected regarding uniform policies, and the administration at McCulloch Middle School recommended approval of a pilot program at the school for the 2008–2009 school year. (Joint Stip. of Mat. Facts ¶¶ 35–36.) On May 28, at a public meeting, the School Board approved the recommendation of the school's administration and adopted the uniform policy. (Joint Stip. of Mat. Facts ¶ 37.) In adopting the policy, the Defendants had a goal of preventing gang-related clothing issues. (Joint Stip. of Mat. Facts ¶ 46.) McCulloch Middle School and the Defendants have a legitimate interest in preventing gang-related clothing issues at the school, and at least one gang-related expulsion has occurred at the school. (Joint Stip. of Mat. Facts ¶ 47.) After the policy was adopted, the school posted a "Uniform Guidelines/Information" page on the Marion Community Schools' website to publicize the policy to McCulloch parents and students. (Joint Stip. of Mat. Facts ¶ 38.) On June 24, the McCulloch principal sent information on the policy to families of McCulloch students. (Joint Stip. of Mat. Facts ¶ 39.)

The Plaintiffs have two biological children enrolled at McCulloch Middle School who are subject to the policy. (Joint Stip. of Mat. Facts ¶¶ 40–41; Derry Decl. ¶ 2.) The Plaintiffs have the financial means to provide their children with clothing to

wear to school and do not need public or private assistance to purchase uniforms for their children. (Joint Stip. of Mat. Facts ¶ 42.) The Plaintiffs prefer to purchase new (not used) articles of clothing for their children and to purchase at least five uniforms for each of their two children who attend McCulloch Middle School so that their children will have a different uniform for each school day of the week. (Joint Stip. of Mat. Facts ¶ 8.) The Plaintiffs prefer to purchase separate, non-uniform clothing for their children to wear while away from school. (Joint Stip. of Mat. Facts ¶ 10.) The Plaintiffs have not requested any exemption pursuant to the policy, including any disability or religion exemption. (Joint Stip. of Mat. Facts ¶¶ 43, 50.) The Plaintiffs are not opposed to the policy, but, based upon a concern that their children while riding their school bus might be bullied by students who are not subject to the policy, they are opposed to the policy being implemented on an experimental or pilot program basis at their children's school only. (Joint Stip. of Mat. Facts ¶¶ 44–45.) The Defendants have received no complaints of bullying, even though some students are already voluntarily complying with the policy. (Joint Stip. of Mat. Facts ¶ 45.) Additionally, the Plaintiffs have no personal knowledge of gangs or gang-related activity at McCulloch Middle School. (Joint Stip. of Mat. Facts ¶ 47.) Before bringing this action, the Plaintiffs filed no complaint with the Indiana Civil Rights Commission against Defendant Marion Community Schools, and neither the Plaintiffs nor their children are in a protected class under Indiana Code § 22–9–1–2. (Joint Stip. of Mat. Facts ¶¶ 48–49.)

## DISCUSSION

Although the Plaintiffs are seeking a preliminary injunction and thus bear the burden of establishing that entry of a preliminary judgment is warranted, the Plaintiffs have offered little evidence or argument in support of their Application for Preliminary Judgment.[2] The parties have decided to bypass the more typical procedure followed with preliminary injunction applications, which would include submitting briefs on the issues and presenting evidence at a hearing. The Defendants have instead filed a Motion for Summary Judgment and have asked the Court to enter judgment on the merits of the case. In support of their Motion, the Defendants submitted evidentiary materials and a brief. The Plaintiffs have responded to the Defendants' Motion for Summary Judgment and have designated the following as evidence: their Application for Preliminary Injunction, the Defendants' Answers to Plaintiffs' Interrogatories, the Plaintiffs' Answers to Defendants' Interrogatories and First Request for Admissions, and the Declaration of Robert Allen Derry. In their response to the Defendants' Motion, the Plaintiffs provided a "Statement of Specific Facts Showing a Genuine Issue for Trial." However, from the Court's review of the Plaintiffs' Statement, it does not appear the Plaintiffs have placed any material fact in dispute or provided proof to dispute the evidentiary materials submitted by the Defendants. The Defendants replied in further support of their summary judgment motion.

The Plaintiffs and the Defendants have now been afforded the opportunity to engage in discovery, to file motions and supporting legal memoranda, to submit and present evidence, and to be heard on the issues before this Court, and this matter is now ripe for ruling. First, however, the Court must address a few jurisdictional issues.

2. With their Application, they submitted an Affidavit of Robert Allen Derry.

## A. Subject Matter Jurisdiction

In their Verified Notice of Removal of Civil Action, the Defendants premise this Court's subject matter jurisdiction on 28 U.S.C. § 1331, which grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In their Verified Notice, however, the Defendants did not address supplemental jurisdiction of the state law claim, perhaps because the Plaintiffs' Application and Motion are not clear regarding the precise claims asserted by the Plaintiffs. Nevertheless, in their joint Scheduling Entry, the parties clarified the Plaintiffs' claims to include a federal claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a federal claim under the Due Process Clause of the Fourteenth Amendment, and a state law claim under the Indiana Civil Rights Law, Indiana Code § 22–9–1–2.

■ Federal courts often observe that they "are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir.2008). Giving the Plaintiffs' allegations a liberal reading, the Court understands the Plaintiffs to allege two federal law claims—both for violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983—and one state law claim. The Court's subject matter jurisdiction over the two federal law claims is properly premised on 28 U.S.C. § 1331. As to the state law claim, the Court's subject matter jurisdiction would be premised upon 28 U.S.C. § 1367(a), which grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court finds that the Plaintiffs' challenge to the uniform policy under Indiana Code § 22–9–1–2 is so related to the Plaintiffs' federal equal protection and due process of law claims that they form part of the same case or controversy.

■ The Court has a duty to consider justiciability concerns before addressing the merits of a case, even when the parties do not raise these concerns. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The Plaintiffs in this case have Article III standing because they would suffer an injury-in-fact (they would arguably have to purchase some clothing for their children that conforms to the uniform policy) should an injunction not issue. *See Bell v. Anderson Cmty. Sch.*, No. 1:07–CV–936–JDT–WTL, 2007 WL 2265067, at *4 n. 8 (S.D.Ind. Aug. 6, 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The parties do not raise the issue of prudential standing, and the Seventh Circuit has, in dicta, suggested that prudential standing issues are not to be raised *sua sponte*. *See MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007) (discussing *MacLauchlan v. Prudential Ins. Co. of Am.*, 970 F.2d 357, 359 n. 1 (7th Cir.1992) (stating that the court "may not raise prudential standing issues *sua sponte*")); *see also Bell*, 2007 WL 2265067, at *2. The Court finds that the Plaintiffs have standing and will address the merits of their claims.

## B. The Defendants' Motion for Summary Judgment

In the pending Application for Preliminary Judgment and Motion for Summary Judgment, the parties present three basic legal questions to the Court for decision: (1) whether the uniform policy violates the Equal Protection Clause of the Fourteenth Amendment by being implemented as a

pilot program at McCulloch Middle School, and not throughout the School District, and by requiring them to incur additional costs for their children to receive a public school education; (2) whether the uniform policy violates the Due Process Clause of the Fourteenth Amendment; and (3) whether the uniform policy violates the equal opportunity for education policy set forth in the Indiana Civil Rights Law, Indiana Code § 22–9–1–2. Because preliminary injunctive relief is properly sought to avert irreparable harm to the moving party and to preserve the status quo pending a ruling on the merits, *Chicago United Indus. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir.2006) (citing cases), the Court will address the Defendants' fully briefed Motion for Summary Judgment before the Plaintiffs' Application for Preliminary Injunction and Restraining Order. The Defendants' Motion affords the Court the opportunity to render a decision on the merits of the Plaintiffs' claims based upon the evidentiary materials submitted by the parties, and the Court's resolution of the legal issues raised by the Motion for Summary Judgment will bear upon the issues pending in the Plaintiffs' Application.

### 1. *Federal Claim—Equal Protection of Laws*

█ The Defendants argue that the Plaintiffs' equal protection claim fails because the uniform policy is rationally related to a legitimate governmental purpose. The Plaintiffs agree that the rational basis standard applies, but argue that the Defendants have not shown discipline and academic problems at McCulloch Middle School, that the dress code at McCulloch during the 2007 school year was not enforced, and that the earlier dress code could have been enforced to deal with alleged discipline and academic problems without adopting the new uniform policy. The Plaintiffs also urge that the Defen-

dants have not established a nexus between their proposed uniform policy and their goals to improve education and to address disciplinary problems and have not shown how the policy will solve the alleged problems. For the Plaintiffs, "it doesn't make sense to have two groups of students who intermingle at school functions, extracurricular activities, and most importantly on school provided transportation, [but who] have two different uniform policies." (Pls.' Mem. in Opp. [DE 17] at 5.) Thus, the Plaintiffs complain about unequal treatment of McCulloch Middle School students and students at other schools in the School District. The Plaintiffs also contend that they are denied equal access to education because the cost of sending their students to public schools is more expensive.

█ The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This Clause generally directs that "all persons similarly situated should be treated alike." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir.2006) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). Although heightened scrutiny (such as strict scrutiny) applies when government actions treat people differently based upon a suspect classification (such as race or national origin) or interfere with fundamental rights (such as freedom of speech or religion), courts apply a rational basis test to determine whether government actions are constitutional when no suspect classification or fundamental right is involved. *Id.* at 1000–01. Under the rational basis test, courts presume government action to be valid and will sustain classifications if they are rationally related to a legitimate government interest. *St. John's United*

*Church of Christ v. City of Chicago,* 502 F.3d 616, 637–38 (7th Cir.2007) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

■■■ Parents have a "'fundamental right to make decisions concerning the care, custody and control of their children.'" *Blau v. Fort Thomas Pub. Sch. Dist.,* 401 F.3d 381, 395 (6th Cir.2005) (quoting *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)).[3] Although this right applies in the public school context, the right is not unqualified. *Id.* (citing *Runyon v. McCrary,* 427 U.S. 160, 177, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)). The Sixth Circuit has thoughtfully discussed the limits of this right in the public school context:

> While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

*Id.* at 395–96 (quoting *Goss v. Lopez,* 419 U.S. 565, 578, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). *See also Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 291 (5th Cir.2001) (finding that although "[p]arents may have a fundamental right in the upbringing and education of their children, this right does not cover the [p]arents' objection to a public school Uniform Policy"). Likewise, the Supreme Court has observed that courts "do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

■■■ Based upon these authorities, the Court finds that the Plaintiffs do not have a fundamental right to direct the dress code or uniform policy that applies at McCulloch Middle School. Because the uniform policy involves no suspect classification or fundamental right, the rational basis standard applies to the Plaintiffs' challenge to the policy, which currently applies only to McCulloch Middle School and not to other schools in the School District.[4] The stipulated material facts show that student discipline and academic performance issues exist at McCulloch Middle School; that the school has had over 3000 disciplinary referrals in the last

---

**3.** The Seventh Circuit has cited with approval the Sixth Circuit's opinion in *Blau. See Brandt v. Bd. of Educ.,* 480 F.3d 460, 465 (7th Cir. 2007).

**4.** The Plaintiffs argue that any school-related policy must be implemented district-wide. (Pls.' Mem. in Opp. [DE 17] at 6 & Pls.' Proposed Findings [DE 25] at 3.) This argument proves too much. If the policy must be implemented district-wide, then by the same constitutional reasoning it must also be implemented state-wide, otherwise there will be groups of public school students in Indiana who are treated differently. Thus, the Plaintiffs convey an understanding of equality, uni-

formity, and fairness in the United States Constitution and the Indiana Constitution that would prevent any school or school district from addressing unique problems at any particular school or in any particular district. As the Court noted above, the Supreme Court and the Fifth and Sixth Circuits have observed that courts are not to interfere with the day-to-day operations of public schools or to resolve issues committed to the control of state and local authorities. What the Plaintiffs request would require that sort of judicial interference and remove from public school officials the discretion to fashion policies to address the problems at specific Indiana public schools or in specific districts.

three school years; that the school is a low-performing school that has not shown adequate progress in five years; that the Defendants are attempting to take steps to address the problems at the school, to make a positive difference in their students' lives, and to improve student academic performance; and that at least one gang-related expulsion has occurred at the school. The Plaintiffs do not argue that these are not legitimate government interests, and they certainly do not establish by evidence that the Defendants do not have legitimate purposes for the policy. Their argument is that a nexus is lacking between the uniform policy and the goals, but this nexus is not subjected to strict scrutiny analysis. Indeed, the nexus need not be perfect; it must only be rational.[5] The Court finds that there is a rational basis for the Defendants (who are state actors to whom the Equal Protection Clause applies) to tailor policies to address problems at McCulloch Middle School (student discipline, academic performance, and at least some gang-related activity) and to experiment with a pilot program to assess whether such a policy makes a difference in student discipline, academic performance, and gang-related activity. *See Hearne v. Bd. of Educ.*, 185 F.3d 770, 775 (7th Cir.1999) (approving different treatment of employees of Chicago public schools); *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1103 (7th Cir.1995) (noting that "it is common knowledge that the public schools of Chicago are a troubled institution" and that legislatures should be permitted to experiment with methods of governing public institutions without undue interference from courts).

Additionally, there is no dispute that the policy does not charge parents or students for uniforms, does not require parents or students to purchase uniforms, does not mandate any minimum number of uniform items or sets, and can be complied with clothing already owned, and that students may wear uniform clothing outside the school setting. Furthermore, choices to purchase clothing (including what number of articles to purchase, whether to buy new or used clothing, whether to buy clothes from more or less expensive stores, and whether to take advantage of arrangements made by the Defendants to all families to acquire inexpensive or even free clothing) are made by parents, and thus parents have considerable control over cost. Any of the potential minimal indirect costs are in part offset by the benefit conferred upon families in the free uniform that is provided by the Defendants, and such potential minimal indirect costs do not erect a barrier to parents and students to equally access public education in Indiana, especially in light of the fact that parents and students will own and possess the uniform clothing. Finally, the Plaintiffs have not shown that the clothing students wear to public school is among the items the Indiana General Assembly or the Indiana Board of Education has included in the state's free public education, and the uniform policy in this case does not appear to impose any fee on parents or students for a free public education cost item that would be part of a free public education in Indiana. *See Nagy v. Evansville–Vanderburgh Sch. Corp.*, 844 N.E.2d 481, 492–93 (Ind.2006) (invalidating under Article VIII,

---

**5.** The Plaintiffs argue (but do not support with evidence) that their children could be subjected to mental anguish and bullying from children who are not required to wear uniforms. This argument, which is founded upon speculation and not evidence, does not call into question the rational basis for the policy. Additionally, the Plaintiffs' argument that a dress code existed but was (according to the Plaintiffs) not enforced during the 2007–2008 school year also fails to undercut the rational basis for the new uniform policy, which the Court assesses on its own merits under the rational basis standard.

§ 1 of the Indiana Constitution a $20 student services fee imposed on all students in kindergarten through twelfth grade to help the school corporation generate additional revenue, balance its budget, and pay for programs and services that are part of Indiana's free public education).

Because the uniform policy passes the rational basis test in that it is rationally related to a legitimate governmental purpose, the Plaintiffs' equal protection claim fails, and the Defendants are entitled to judgment as a matter of law on this claim.

### 2. *Federal Claim—Due Process of Law*

█ The Defendants argue that the Plaintiffs' due process claim fails because the uniform policy is rationally related to a legitimate governmental purpose. The Plaintiffs claim that "they will be financially damaged because they will have to purchase both uniforms that comply with the policy and regular clothes for their children which will result in their children being denied equal access to education in violation of the United States Constitution and Indiana public policy." (Pls.' Mem. in Opp. [DE 17] at 6.) The Plaintiffs also argue that the Defendants through the uniform policy will deprive them of property (in the form of money) in violation of the Due Process Clause "because they will be required to purchase uniforms that comply with the policy" and because this cost "does not have to be paid by parents whose students attend other schools in the district." (Pls.' Mem. in Opp. [DE 17] at 7.)

█ The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Due process claims are of two sorts: substantive and procedural. Substantive due process requires that, before a government actor may deprive a person of life, liberty, or property, the government must have a rational basis (i.e., " 'the reason for the deprivation may not be so inadequate that the judiciary will characterize it as "arbitrary" ' "). *Gen'l Auto Serv. Station v. City of Chicago,* 526 F.3d 991, 1000 (7th Cir.2008) (quoting *Jeffries v. Turkey Run Consol. Sch. Dist.,* 492 F.2d 1, 3–4 (7th Cir.1974)). With due process claims, property interests must exist by virtue of some independent source, such as a contract or state law. *Id.* The Due Process Clause does not eliminate a government actor's ability to deprive a person of a property interest; it only circumscribes that ability. *Id.* Indeed, the Seventh Circuit has observed that "[s]ubstantive due process is not a blanket protection against unjustifiable interferences with property. . . . It is instead a modest limitation that prohibits government action only when it is random and irrational." *Id.* (internal quotation marks and citations omitted). Furthermore, unless "a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Id.* (quotation marks omitted).

As the Court found above, the Plaintiffs do not have a fundamental right to direct the dress code or uniform policy at McCulloch Middle School, and thus the rational basis standard applies to the Plaintiffs' due process challenge to the uniform policy. The stipulated material facts show that the Defendants (who are state actors for purposes of the Plaintiffs' due process claim) had several purposes for adopting the uniform policy, including addressing problems associated with student discipline, academic performance, and at least some gang-related activity at McCulloch Middle School; helping students to be successful, productive citizens and teaching them how

to "dress for success"; and achieving the outcomes indicated by the research on the effectiveness of uniform policies at other schools. The Plaintiffs do not argue that these goals are not legitimate government interests, and they do not establish by evidence that the Defendants do not have legitimate purposes for adopting the policy. Based upon the evidentiary materials before the Court and the applicable standards, the Court cannot say that the uniform policy is arbitrary or irrational or that it is not rationally related to legitimate governmental interests. Accordingly, the Plaintiffs' due process claim fails (to the extent that it can be liberally construed to state a substantive due process claim).

■ Procedural due process "affords state citizens with the right to notice and an opportunity to be heard before being deprived of 'property' as defined by state law." *Taake v. County of Monroe,* 530 F.3d 538, 543 (7th Cir.2008). Procedural due process protects persons " 'not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property.' " *Dargis v. Sheahan,* 526 F.3d 981, 989 (7th Cir.2008) (quoting *Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)) (emphasis in original).

■ In this case, any deprivation of property, which the Court will assume without deciding,[6] occurred through legislative (or quasi-legislative) action on the part of the Defendants, not judicial (or quasi-judicial) action. *See Indiana Land Co. v. City of Greenwood,* 378 F.3d 705, 710 (7th Cir.2004) (stating that when the government actor's decision is confined to a legislative rather than a judicial body, "the affected persons have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process") (citing Supreme Court and Seventh Circuit precedent).[7] In other words, the Defendants in adopting the policy were acting in a legislative (lawmaking) capacity to establish rules that applied to all parents and students at McCulloch Middle School, not in a judicial capacity to apply the policy to the Plaintiffs and their two children. Furthermore, the Plaintiffs have not established that the Defendants lacked authority to adopt the policy, failed to follow procedures required by law, failed to give notice, or failed to give the public or the Plaintiffs an opportunity to be heard. The undisputed facts show that the Defendants provided a number of processes, including utilizing a uniform policy committee comprised of students, parents, and staff, conducting public meetings, and

6. The undisputed facts show that parents are generally responsible for providing their children with clothing, including school clothing. If the Plaintiffs incur any costs in purchasing uniforms, their purchasing choices will play an important role in dictating the costs incurred. Furthermore, the Plaintiffs and their children will own and remain in possession of clothing they purchase, so it is difficult to say that the uniform policy works a deprivation of property.

7. The rationale for this rule is helpful to understanding procedural due process in this case:

An important reason for not requiring notice and an opportunity for a hearing when legislative action is at issue is that legislation normally is general in its scope rather than targeted on a specific individual, and its generality provides a safeguard that is a substitute for procedural protections. The greater the number of people burdened by a proposed law, the easier it is to mobilize political resistance, and the likelier moreover that the burdened class includes constituents of the legislators proposing to impose the burden. If a legislature can focus burdens laser-like on a hapless individual, he has no political remedy, while if it has to place an equal burden on many others he has a political remedy in concert with the others.

*Indiana Land Co.,* 378 F.3d at 710.

inviting public input, and that the Plaintiffs themselves were afforded and took advantage of the opportunities to be involved and provide input. The Plaintiff have made no showing that they or their children are being singled out, targeted, or disciplined under the policy, and thus the specific procedural protections involving notice and an opportunity to be heard are not triggered. Because the adoption of the uniform policy was essentially a political and legislative act and not a judicial act, the Plaintiffs' due process claim fails (to the extent that it can be liberally construed to state a procedural due process claim).

Because the uniform policy passes the rational basis test in that it is rationally related to legitimate governmental purposes and because the policy's enactment was legislative activity, the Plaintiffs' due process claim fails, and the Defendants are entitled to judgment as a matter of law on this claim.

### 3. *State Claim—Equal Access*

▮▮▮ Now that the Court has found for the Defendants on all of the federal claims asserted by the Plaintiffs and thus on all claims over which it had original jurisdiction, the Court must decided whether to retain jurisdiction over the remaining state law claim or remand the case to state court. 28 U.S.C. § 1367(c)(3). The general rule is that, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.1994) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The Seventh Circuit has recognized that this general rule "is subject to three recognized exceptions: when the re-filing of the state claims is barred by the statute of limitations; where substantial

judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir.2007).

In this case, the statute of limitations is not an issue, and because of the expedited schedule adopted for discovery, motions, briefing, and hearing, substantial judicial resources have not been committed. Furthermore, although the parties' Joint Stipulation includes certain facts—the present failure of the Plaintiffs to file a complaint with the Indiana Civil Rights Commission and the fact that neither the Plaintiffs nor their children are in a protected class under Indiana Code § 22–9–1–2—that raise doubts regarding whether the Plaintiffs will ultimately prevail on their state law claim, the Court, mindful of the general rule and the federalism concerns embodied in § 1367(c), *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 366 (7th Cir. 1998), is not convinced that it is clearly apparent how the state claim is to be decided. The Court, therefore, declines to exercise its supplemental jurisdiction over the remaining state law claim.

### C. The Plaintiffs' Application for Preliminary Injunction and Restraining Order

Based upon the Court's grant of the Defendants' Motion for Summary Judgment on the two federal law claims, the Plaintiffs' Application for Preliminary Injunction and Restraining Order on those claims has been rendered moot and will be denied as such. The Plaintiffs' Application for Preliminary Injunction and Restraining Order as to the state law claim will be remanded to the Grant Superior Court.

### ORDER

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE

14] is GRANTED IN PART as to the Plaintiffs' two federal law claims and DENIED IN PART as to the Plaintiffs' state law claim. The Clerk of the Court is directed to enter judgment for the Defendants and against the Plaintiffs on the Plaintiffs' equal protection and due process of law claims. As a consequence of the Court's ruling on the Motion for Summary Judgment, the Plaintiffs' Application for Preliminary Injunction and Restraining Order [DE 1] is DENIED IN PART AS MOOT as to the Plaintiffs' two federal law claims. The Court will not exercise its supplemental jurisdiction over the remaining state law claim, and the Court therefore REMANDS this claim to the Grant Superior Court.